argument this morning. It's case 17-20545, Env TX Citizen Lobby v. ExxonMobil. We'll first hear from Mr. Post whenever you're ready, Counsel. Thank you, Your Honor, and may it please the Court. This Court's prior opinion in this case established that civil penalty claims cannot be litigated in gross and that the satisfaction of the fact finder for each day of violation for which penalties are awarded. I think those two holdings establish important background principles for this second stage of the appeal, which should be carried to their logical conclusion. And I want to address two issues with the Court this morning. First, just as standing cannot be dispensed in gross, I want to suggest to the Court that the Court should not hold that whole categories of violations satisfy traceability per se because that is, in essence, deciding traceability in gross. And I think the recent TransUnion decision is incompatible with that approach in a couple of ways that I'll explain. Second, just as standing cannot be dispensed in gross, economic benefit findings should not be made in gross but should be limited to the particular violations for which penalties are being awarded. If not, the holding about standing being decided with particularity would be utterly meaningless. Now, if the Court will permit me, I'd like to begin with a few remarks on the standing issue. I know the Court has already decided that question, but I do think that the TransUnion decision has important implications for the standing analysis. And that is in two respects, both with respect to injury in fact and with respect to traceability. Because after TransUnion, I think it's quite clear that this judgment could be upheld only if the evidence at trial proved that these plaintiffs suffered concrete and particularized injuries for each of the 3,651 days for which the district court awarded penalties. But because of the plaintiff's trial strategy, the way they put on their case, that's just not the case. TransUnion established that only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue over that violation in federal court. And I want to use the facts of TransUnion to suggest a modest hypothetical to illustrate why I think it is so important here. As we all know, TransUnion involved a class action with 8,000 members. The evidence at trial proved that 2,000 of those 8,000 members suffered a concrete injury when a false credit report was published to a third party. The Supreme Court held that because there was no evidence that the other 6,000 had suffered that injury by publication, they had no standing. Let me change the facts slightly. Imagine that TransUnion involved a class of 2,000 members, but 8,000 false credit reports. The defendant had actually issued false reports on four consecutive years, but only in one year did it actually publish the reports to a third party. In that scenario, I think TransUnion makes it very clear that class of 2,000 members would be entitled to recover for only the 2,000 actual injuries they suffered for the false publications, but not for the 6,000 that never left the defendant's files. On the record of this case, that's what we have in our case. Because complaints about violations that occurred on days when the plaintiffs didn't prove that they suffered a concrete and particularized injury are not analytically different from the claims of those class members whose credit reports were never published. Even if it's likely, and I think this is a very important aspect of TransUnion, even if it's likely that those reports could have been published, the Supreme Court held that absent evidence at trial showing publication, standing was not established. And that's what we have in this case, because these plaintiffs only proved concrete and particularized injuries for 40 days of violations. The fact that there may have been general testimony about observing flares or smelling emissions doesn't mean that's a concrete and particularized injury for a day of violation for which penalties are sought. And that is, I think, why it's critical that in the first decision this court established, those elements of standing must be established for each day of violation. This record simply doesn't establish that. Second point with respect to TransUnion is that TransUnion reaffirms the need for causal link between the statutory violation and the injury. We debated in the briefing about this hypothetical in TransUnion about the difference between the Maine and the Hawaii plaintiff. The plaintiffs say that's only about injury in fact, but of course that's not true. It's about causation just as much as it's about injury in fact. It's about whether a violation actually caused an injury. Mr. Post, what Supreme Court case says that traceability requires but-for causation? Your Honor, I think that numerous Supreme Court cases say that traceability establishes a causal connection. I'd point to Lujan and the Steel Company decision. And as I've explained in the briefing, I understand that to be cause in fact. When you say cause in fact, you're saying but-for confused. There obviously has to be some type of causal link. I don't think anyone disagrees with that. That's right. A slight nuance, Your Honor. But-for causation strictly understood obviously is not satisfied unless a plaintiff can show that but-for a defendant's acts it would not have suffered injury. As the plaintiffs have pointed out, that test breaks down in some cases in the tort context where there are concurrent causes. And so what I understand the causal connection requirement to mean is that at a minimum, there must be cause in fact. That is, the plaintiff must establish a direct causal link between the defendant's conduct and at least some contribution to the plaintiff's injury. And that is what is lacking in this record. Because all the plaintiffs proved in this trial was a causal connection to these 40 days of violations. And I think that the court's ruling with respect to what I've described as per se categories of traceability just repeats the standing in gross error because it holds that the plaintiffs can prove traceability categorically for a whole range of violations without actual proof of cause in fact. And I want to make an illustration to make this point. Talk to me about Laid Law. In Laid Law, which was somewhat familiar, similar to this case, except it was a clean water case, and pollutants were released in the stream over five or six years. And the people who lived along the river smelled the odor and saw the discoloration. And the court didn't require causation as to each one of those injuries. They said they awarded damages based on just those facts. So it seems to me, tell me where I'm wrong, that they had to necessarily find that the plaintiffs had established traceability. They affirmed the damage award. I apologize, Your Honor. I didn't mean to interrupt. I think there's two points that I would make with respect to the court's question about Laid Law. First is that this is where this court's holding that all elements of standing must be established for each day of violation for which penalties are sought becomes decisive because that issue was not raised and litigated in Laid Law. The Supreme Court did not decide that question. Once you establish that you have to prove the elements of standing for each day of violation, then you necessarily have to prove that causal connection for each violation on a day for which an injury is alleged. Second point is that I believe in Laid Law, and I will confess I don't remember the precise context in which the case came before the court, but either you're dealing with a context in which you have to infer the most favorable findings from the record, or the lower court had actually made fact findings establishing the causal link. The distinction here is that the district court has not made factual findings establishing a causal link to anything except these 40 days of violations. This court instructed the district court to find traceability essentially as a matter of law where certain characteristics existed, but Judge was not given the freedom to make his own findings. I want to underscore just how impractical those per se categories are. They sweep in a massive number of violations for which there is no plausible argument that there could have been any impact on the plaintiff. In page 9 of our opening brief in this appeal, the original brief, we cited 10 illustrations of absurd scenarios that could not plausibly have affected the plaintiffs. On this court's limited remand, the plaintiffs took the position that five of those 10 incidents satisfied the per se traceability requirements for Flaring and for Hayes, and that just proves that these per se categories cannot be stable as a matter of traceability analysis. I'm sure you're familiar with our case Texas United versus Clown Central. In that case, we expressly rejected the argument that the plaintiff has to prove causation as to each particular injury. So isn't that the law of the circuit? Your Honor, I am pleased to have a chance to address Texans United because there's an important distinction. In that case, you were deciding the case and the posture of a summary judgment disposition, and the only question was whether the plaintiff could proceed. The court was never asked to decide whether the elements of standing were established with respect to particular days of violations for penalties, and that distinction makes all the difference. I have no quarrel with the decision in Texans United, but it holds that you don't have to establish causation for each day of violation simply to stay in court. It doesn't compromise... But with summary judgment, to get past summary judgment, you have to have evidence that would allow a fact finder to rule for the plaintiff. That's the summary judgment standard. And then after trial, which is what we have in this case, the fact finder gets to decide if, in fact, he is convinced that way. So I guess I'm not sure how... In other words, if a case is enough, there's enough evidence to get past summary judgment, by definition, you're not entitled to a judgment as a matter of law, and the court can make that fact finding as he wishes. At this stage in Texans United, the court was not asked to decide with particularity standing as to each violation. And the key distinction, Judge Costa, is that the fact finder here, Judge Hittner, did not find a causal connection between any of these violations, except the 40 days of violations that he found to be correlated. The court's opinion has papered over that defect by ordering as a matter of law that traceability is established for certain categories. But Judge Hittner did not make those findings. And in fact, with respect to the categories... Well, originally, he made findings that there were 16,300 days of violations. So that's what was before our court last time. And based on those findings, we did say, well, some of these work, some you need to go back. I mean, the thrust of your brief is that the last opinion's traceability requirement was not stringent enough, essentially. That's hard to reconcile with the fact that it resulted in almost 80% of the days of violations being wiped away. I mean, there seems to be a disconnect. I think it's well over 75%. It went from 16,300 to 3,600. That's a toothless standard. It is not a toothless standard. It significantly moved the needle forward toward the correct causal connection. But it doesn't change the fact that the court still was ordered to find traceability with respect to violations for which there's no evidence of concrete and particularized injuries. And if I may, I want to make certain that I don't overlook the economic benefit point, because this same problem manifests itself with respect to economic benefit. And Judge Costa, in a sense, you make my point. The number of violations has been reduced by 80%. Yet the economic benefit finding is the same. The reason is that the court has been making the economic benefit finding in gross in just the same way that the standing issue was litigated. And the statute doesn't permit that. The statute requires a finding of the economic benefit associated with delayed costs necessary to correct the violations at issue. The plaintiffs didn't prove that fact with respect to these four agreed projects. What the evidence shows is that these four agreed projects were intended to reduce emissions, and there was an anticipation that they would reduce some upset emissions. But there is no violations that are being based as the foundation for the civil penalties. And that's because let me ask you one more question before your time runs out. What is your best case from the Supreme Court or another circuit that this to prove traceability you've got to prove a connection between each violation and each injury? Your Honor, I would stand on Lujan. Lujan establishes the causal connection that's required between a concrete and particularized injury and the challenge conduct. And once this court establishes the premise that that proposition must apply to each day of violation, I think it necessarily follows that that causal connection must be shown to each concrete and particularized injury for penalties, not in order to avoid a motion to dismiss, not in order to defeat a motion for summary judgment. But in order to recover this relief, which is daily penalties, the elements of standing must be shown with respect to each of those penalties. You can't show me language in Lujan that says that, though. Well, Your Honor, in Lujan, the question about establishing the elements of standing for each day for which penalties are assessed was not litigated. That's the question this court decided in the first round of this appeal. But once you establish that predicate, all of the Supreme Court standing principles stand for that proposition. The case I think I would point to, Your Honor, direct response to your question is the Chrysler opinion and the line of authorities tracing back to Blum versus Yuretsky that establishes just because a plaintiff proves that it has suffered an injury from one wrongful act doesn't mean it has standing to recover for similar wrongful acts. That's the proposition we're applying here with respect to each day of violation. All right. Thank you, Mr. Post. You'll have your rebuttal. Thank you. And we'll now hear from Mr. Cracker. Thank you, Your Honor. May it please the court. Let me, I guess, dive right into the two main issues that just, the main issue that just came up, which is the traceability standard. First, as a preliminary matter, I'll address Lujan, which is a case expressly focused on injury and redressability. It expressly does not address the traceability. And Lujan's concerns simply don't apply to the case here, as TransUnion doesn't really apply to the case here. The plaintiffs here suffered actual harm. Lujan distinguished such cases from their holding in that case. They expressly were not talking about cases where plaintiffs had an actual injury. Here, this court and the district court have found that plaintiffs live, quote, in the discharge zone of Exxon's emissions. Lujan also focused on whether future injuries were imminent because plaintiffs were geographically far from the objectionable activity. Again, that's not the case here. Counsel, how many of the violations that Judge recall off the top of my head between, we did present, there were violations that, some violations that continued through the end of the eight-year period. There were additional violations that continued to happen literally through trial, which we presented evidence of. I apologize, I don't know the exact number from March to September. Well, if you can find it, I'd be curious, maybe the, our presiding judge will let you submit it to us. I've looked very carefully through his opinion and I can't find him specifying. Would you agree with me that whatever number of violations occurred between March of 2013 and September of 2013 are excluded as a matter of law because none of the plaintiffs lived, visited, or otherwise connected to the discharge zone? No, I would not, your honor. How could those be traceable to whatever injuries the plaintiffs may have incurred if there was literally no plaintiff after March of 2013 anywhere near the facility? I'm disagreeing with the premise of that question, your honor, that Shay Cotter continued to live in Baytown within two miles of the plant and continued his normal activities, which took him throughout the city of Baytown and close to the plant. Marilyn Kingman, who lived in Mount Bellevue a few miles further away, continued to shop, work, worship, attend basketball games within a mile of the Exxon facility. And in fact, both Ms. Kingman and Mr. Cotter testified at trial that they specifically smelled odors, which they could link up to emission events all the way up through the trial. Mr. Cotter showed a picture on his cell phone of several days before when a flare was going off that was unauthorized flaring. And he was at the Exxon and he immediately left. The American Fuel amicus brief with citations to the trial record says the only plaintiffs who testified to suffering injuries after September 2012 did not live in Baytown. That is Marilyn Kingman and Diane Aguirre-Dominguez. And one of those members stopped visiting Baytown regularly after March 2013. That's Ms. Dominguez. And that's with citations to the trial testimony in the record. So what trial testimony are you referring to that suggests that the American Fuel amicus brief is just wrong? Well, I just explained that trial. I just outlined that trial testimony. I don't have the transcript in front of me. I can't point you to page and line number. But the days when those two witnesses testified, Ms. Kingman and Mr. Cotter, you can find their testimony there. It's, I believe, as I represented. And so how are we supposed to link data violations traceable to these plaintiff's injuries to the plaintiff's injuries if we don't know which days of violations link up with which days of the plaintiff's being present within the discharge zone? Well, this gets to Exxon's approach to, well, let me focus on the test that the interim panel, that the panel laid out in its interim guidance. The panel emphasized as well that the need to establish standing for each violation, as Judge Davis just pointed out, does not require a separate group for each violation. The testimony can support standing for multiple violations. The same testimony can support standing for multiple violations and circumstantial evidence, reasonable inferences can be used. This holding was not overturned by two plaintiffs. At least two plaintiffs continued to be in the area where those admissions were present. Can I try to get at it this way? I'm looking at, this is, I'm just taking one of the several examples where Judge Hittner does the same sort of boilerplate sentence, obviously changes the numbers, but I'm just, I'm looking at page 19 of his opinion. It's page 75,443 of the record. And he says this, quote, having reviewed the events and deviations for said violations, the court finds plaintiffs have established standing as to 76 violations totaling 354 days of violations. This is involving voters. How many of these 76 violations totaling 354 days of violations apply to count one? Again, I don't have the numbers off the top of my head. Do you think it's in the opinion? Is it in the opinion? Yes. Because I'm looking at it and I don't see it. I mean, he's got totals, for example, for flaring and smoke. He's got totals as to count one. And he leaves me to infer how many of these I might be able to attribute to odors or allergies, inhaled respiratory conditions, but never actually says which one of these 354 day violations go to count one, which go to count two. How do I know they're double counted? He just asserts it. 76 violations, 354 days of violations as to odors. So I'm not sure how you review it. Yes. I mean, Judge Hittner described exactly how he went through each of the tables that plaintiffs put together, outlining each type of violation under each count from each facility. He described in great detail the way in which he applied each element of the traceability rubric to the evidence presented at trial. He organized the results, grouping the traceability violations by count, by facility, by type of violation, by pollution. And I'm asking you, how does he group it by count? So there's nothing that specifies by count, right? It just says 354 days. There's a footnote, 45. And he says, here's the breakdown, right? But he doesn't break it down by count. 66 violations during 300 days from reportable events, six violations for et cetera, et cetera. Then he says, see plaintiff's exhibits 587, 591, 593 in the traceability spreadsheets. So for example, I'm looking at the traceability spreadsheets and I don't know how I'm supposed to figure out. Obviously the text is super small, but I don't understand how I get to 354. Which 354 days are they? Remind me which page of the opinion you're looking at. Oh, I'm sorry. We could do this for if you would rather do a different one. There's six or so of these sentences. I was just looking at the odors one. It's on page 19. If you want to do one of the others, it's more convenient. I'm happy to talk about that. I was just hoping that maybe you could walk us through how I'm supposed to figure out what days are in fact being held to be traceable and how it would be judicially reviewable if he literally just says 76 violations, 354 days of violations, see the spreadsheets and traceability worksheets which don't specify which days and which plaintiff and really anything. I refer back to the rubric that this court provided to the judge in conducting this analysis and that rubric was in the context of both the district court's finding and this court's finding that plaintiff's members suffered a near constant assault of flaring, smoke, unwanted chemical odors, respiratory symptoms, all of which required them to change their behavior to fear for their health and safety, avoid outdoor activities near the complex. But if we, what the rubric allowed, sorry. No, please go ahead. What the rubric allowed the proximity, which the plaintiffs did and flaring occurred, I mean, isn't that, which that establishes traceability. It's, if the flaring caused an injury, I mean, it doesn't matter if it happened on May 10th or May 20th. If you're close by and flaring causes a harm, it's going to cause it on both days or not. In other words, what would the difference be May 10th and May 20th for flaring if you're in the vicinity of the plant or refinery? Yes. And the plaintiff's testified that they were injured as Exxon points out by both legal and illegal emissions from the plant. Those injuries were essentially constant throughout the period. As this court found at least one plaintiff was present and complaining about impacts throughout the eight year period. What the rubric allowed the district court to do was to go line by line through the tables that we presented of every single day of violation and every pollutant. And he explained explicitly in his opinion, how he conducted that analysis and what he came up with. And again, so now I'm worried that you're proving too much, right? Because let's just take count one. The district judge initially finds 10,583 days of violation. In the remand, the district judge just asserts 2,120, right? So a delta of 8,463 days of violations. So if Judge Costa's right, that what plaintiffs were present throughout and flaring is per se, ipso facto, that's a violation that's traceable. Why is the number not 10,583 as opposed to a negative delta of 8,463? Judge Hittner went through each emission event. In our view, he was overly stringent in determining, for example, for flaring, which emission events did involve flaring and which that hadn't been sufficiently proved. That, I think, explains a lot of that delta, that unless he found a specific description by Exxon in its Steers report using the word flaring, even though they may have labeled the event as a flaring event, that he didn't count that as a flaring violation. So I think that explains a lot of that difference. But how am I supposed to figure out where the 8,463 fall out? Well, at some point, the appeals court is not the trial court. The trial court did its job, explained in excruciating detail how it applied every aspect of this panel's rubric and guidance to each of the 16,000, the set of 16,000 actual violations, and how it applied this court's analysis and logic to determining which of those ended up, and as this court required, not a line-by-line, 100-page accounting of each violation, but this court instructed the trial judge to group types of violation in a manner that made sense, which Judge Hittner did. Counsel, how would you explain where the 8,463 days of violations fell out of count one between the first order we got from Judge Hittner and this one? How would you explain it? What part of his opinion would you cite me to to understand why those 8,463 are now gone? Again, it's a little bit beyond my capacity to page through his opinion at the moment, but my understanding of his opinion is that he took each element of your traceability guidance, first applied it to flaring events and smoke events, and he went through and identified each event, each specific emission violation that he determined was from flaring or involved smoke, and counted those up and gave you a figure for those. With what was remaining, he then went through and looked at odor-causing pollutants violations, respiratory emission violations, emissions in which a non-zero limit was exceeded, and because count one doesn't have any non-zero limits, he didn't apply that to count one, so he was totally focusing on the geographic nexus requirements involving reportable quantities of emissions and any other evidence that the amount of each odor-causing or respiratory injury-causing pollutant was emitted off-site in an amount that could be detected by plaintiffs who lived in the area. And since Texans United does not require a specific linking of days of violation to a specific injury, it was enough for the district court, scrupulously following the directives given by the interim panel, to come up with his highly detailed and well-organized counts of violations that were traceable according to this panel's guidance. And I want to note that Exxon, both in its supplemental reply brief and in Mr. Post's argument a few minutes ago, has apparently backed off the strict but-for causation standard as the requirement for traceability, which it has to because as Justice Alito, in his 2004 Third Circuit opinion when he was on the Third Circuit, correctly observed that the Supreme Court has never required but-for causation as the exclusive method of proving traceability. And that opinion came after the cases cited in the dissent asserting that the Supreme Court has required a but-for standard. Nothing has changed since then. TransUnion does not, I think what Exxon needs here is in order to, Exxon is not really the focus of the attack is on the guidance that this interim panel provided as to traceability. And TransUnion, which explicitly held that it was concerned with, I think the second line of the opinion very accurately sums up what that case is about, no concrete harm, no standing. This case, concrete harm has already been well-established and affirmed by this panel. TransUnion focused on plaintiffs who had not yet suffered harm from violation of a procedural right, that is simply not the case here. And if I may analogize to TransUnion in terms of traceability and causation, TransUnion, the court there was looking at similar types of injuries recognized in tort law, a law of slander, for example, as a historical precedent for the reputational harm that was being asserted in TransUnion. And the court found that the plaintiffs who lacked standing were the ones who couldn't establish a concrete injury because their inaccurate information in their credit file was not published. And the court recognized that the plaintiffs who lacked standing were the ones who couldn't establish a concrete injury. Publication is, I'm looking at page 2211 of the TransUnion case, for torts like slander, publication is generally presumed to cause a harm, albeit not readily quantifiable harm. Actual, and as Spokio noted, the law has long permitted recovery by certain tort victims, even if their harms may be difficult to prove or measure. I would analogize that to this case, where if Exxon had built a dome over its facility so that even if it violated its permit limits, no pollutants could be broadcast or published into the neighborhoods around the plant, you could have violations without injury. Here, it's been established the injuries were constant and that this panel's rubric and guidance to the district court allowed the district court to determine among all those 16,000 violations, which were the ones that were actually broadcast or published, if you will, into the surrounding communities, where it is undisputed that the plaintiffs lived, recreated, shopped, et cetera. Mr. Krakow, let me ask you one question. How do you answer Exxon's argument that the criteria that we set out for the district court to find traceability mandated a finding traceability rather than allowing the judge to take that evidence and draw the inference that there was traceability? I think the criteria for the judge to apply were reasonable. Again, just going along with the language I just quoted from TransUnion citing Spokio, circumstantial evidence and reasonable inferences can be drawn in order to establish whether a pollution violation in this case was of a sufficient type, quantity, and location that it could cause the types of injuries that is established plaintiffs complained of. The requirements set out or the guidance set out in this panel's interim opinion were completely reasonable on that score. If you want to know whether an emission should give rise to reasonable concern, you look at what the expert agency has said as to what quantity of each different pollutant is sufficient to cause such a reasonable concern. If you're looking at what levels of pollutants might actually have an impact in the communities, you look at the health-based hourly limits that Exxon exceeded. Again, limits set by the regulatory agencies who have expertise in this only required for the threshold inquiry of whether these plaintiffs get into court in the first place in order to prove their strict liability claims. All right. Thank you, counsel. We have your argument. And Mr. Post, you get the last word. Five minutes. Thank you. I want to begin with Judge Davis's question about the per se categories of traceability. You hear that plaintiffs counsel argued that those categories were quote reasonable, but did not deny that they mandated findings by the district court of particular categories of conduct without allowing the district court to make his own finding. This was not a situation where the court said in these categories, circumstantial evidence may permit a reasonable inference to be drawn of a causal the district court that because it believed the inference was reasonable, the district court was required to make those findings in every instance that satisfied that category. And I want to quote from the interim opinion because with respect to the issue of emissions that exceeded reportable limits or non-zero emissions limits, this court said it would be an easier inference that the court said that inference would be easier but didn't give him the privilege of making that determination. With respect to the categorical rule for flaring, the court said plaintiffs members could undoubtedly see such flaring violations. But Judge Hittner didn't make that finding. Judge Hittner found that they only observed 40 days of violations. And so a categorical rule that says he is required to find traceability in every instance in which there's a flaring or a smoke event or a reportable event goes too far. That translates this from an evidentiary test that allows the fact finder to make the determination into a matter of law rule and traceability which is no different than deciding traceability and gross. I want to stress this point because there's perhaps some confusion about the precise state of the record. Plaintiffs argue about evidence that might have permitted the district court to they argue about evidence from their witnesses about particular injuries. That is not the question. Judge Hittner made findings. His findings are supported by the evidence to the extent his findings were not favorable to the plaintiffs. They cannot overcome those findings on appeal. The only findings that he made of concrete and particular injuries that are traceable to days of violation are these 40 days that are correlated. We are not trying to I'm arguing about old time religion. I'm arguing about basic principles of article three and deference to the fact finder. And Judge Hittner was the fact finder and those findings should be respected. I want to emphasize the practical implications of what the plaintiffs are arguing here because it's important not to overlook it. This theory is a roadmap for runaway citizens. If you couple the plaintiff's ability to package all of these legally required reports and records which Exxon Mobil and every regulated entity is required to maintain with these per se categories of traceability, a citizen plaintiff can simply package that up, present it to the court and with generalized testimony about experiencing the kinds of events that they That is precisely what TransUnion warned that courts should not permit. Article three is designed to prevent private citizens from invading executive discretion. And make no mistake, if this traceability analysis goes forward, this opinion will be the roadmap for future citizen suits that completely divorce article three from cause and fact and from traceability requirements. And I think that practical implication is important not to overlook. Final point that I'll make is that the plaintiffs didn't have anything to say about the economic benefit issue. Whatever you think of article three, whatever you think about the causal nexus that is required between a data violation and a concrete and particular injury, the language of the Clean Air Act is unambiguous and requiring a nexus between the economic benefit finding and the violations at requires proof that a particular investment would have been necessary to correct those violations. Because these plaintiffs didn't prove their case with any particularity, their record doesn't establish any causal nexus between these four projects and the particular violations that Judge Hittner has found support penalties. And so at the very least, there should be a reversal and rendition that there is no evidence of any economic benefit of non compliance. I thank the courtesy. All right. Thank you, counsel. Thanks to both sides for the helpful arguments. And I know you didn't have the normal length of advance notice we give. So I appreciate the adaptability and being prepared on our timeline. With that the case is submitted and counsel's excuse. Thank you all. Thank you.